﻿Citation Nr: AXXXXXXXX
Decision Date: 02/28/20 Archive Date: 02/28/20

DOCKET NO. 180620-288
DATE: February 28, 2020

ORDER

A rating in excess of 20 percent for peripheral neuropathy of the left lower extremity is denied.

A rating in excess of 30 percent from August 28, 2017, to October 12, 2017, and in excess of 20 percent from October 12, 2017, for peripheral neuropathy of the right lower extremity is denied.

An effective date for a 30 percent evaluation for peripheral neuropathy of the right lower extremity prior to August 28, 2017, is denied.

A total rating by reason of individual unemployability due to service-connected disabilities (TDIU) is granted.

FINDINGS OF FACT

1. The Veteran’s peripheral neuropathy of the left lower extremity is manifest by no more than moderate incomplete paralysis. 

2. The Veteran’s peripheral neuropathy of the right lower extremity is manifest by no more than moderate incomplete paralysis.

3. The Veteran’s claim for an increased rating for peripheral neuropathy of the right lower extremity was received on August 28, 2017; there is no competent evidence demonstrating an increase in right lower extremity peripheral neuropathy in the one year prior to that date. 

4. Service connection is currently in effect for coronary artery disease, rated 60 percent disabling; neurogenic bladder, rated 30 percent disabling; peripheral neuropathy of the left lower extremity, rated 20 percent disabling; peripheral neuropathy of the right lower extremity, rated 20 percent disabling; diabetes mellitus, rated 10 percent disabling and residual scars from cardiac surgery, rated noncompensable; the Veteran’s combined evaluation is 90 percent. 

5. The Veteran reports he has four years of high school education and work experience as a greeter and driver for an automotive group. 

6. The Veteran’s service-connected disabilities, standing alone, are shown to be of such severity as to effectively preclude all forms of substantially gainful employment. 

CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 20 percent for peripheral neuropathy of the left lower extremity have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.124a, Diagnostic Code 8521.

2. The criteria for a rating in excess of 30 percent from August 28, 2017, to October 12, 2017, and in excess of 20 percent from October 12, 2017, for peripheral neuropathy of the right lower extremity have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.124a, Diagnostic Code 8521.

3. The criteria for an effective date for a 30 percent evaluation for peripheral neuropathy of the right lower extremity prior to August 28, 2017, have not been met. 38 U.S.C. § 5110(a)(b); 38 C.F.R. § 3.400(o). 

4. The criteria for TDIU have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.340, 4.16). 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from November 1970 to November 1972. 

In a November 2017 rating decision, the Veteran was denied a rating in excess of 20 percent for his peripheral neuropathy of the left lower extremity and granted a 30 percent rating for his peripheral neuropathy of the right lower extremity, effective August 28, 2017 (date of claim). In a December 2017 rating decision, the Veteran was denied entitlement to TDIU. The Veteran then filed a January 2018 notice of disagreement as to both the November 2017 and December 2017 rating decisions, disputing the effective date and disability ratings assigned for his service-connected peripheral neuropathy of the left and right lower extremities and the denial of entitlement to TDIU.

In April 2018, the Veteran opted into VA’s Rapid Appeals Modernization Program (RAMP). 38 C.F.R. § 19.2(d). Accordingly, the Regional Office (RO) issued a June 2018 rating decision that continued a 20 percent for the Veteran’s peripheral neuropathy of the left lower extremity and assigned a 20 percent rating for his peripheral neuropathy of the right lower extremity, effective October 12, 2017 (date of VA examination). The rating decision also denied entitlement to TDIU as well as an earlier effective date for the 30 percent rating that had been previously assigned, effective from August 28, 2017, for the Veteran’s peripheral neuropathy of the right lower extremity.

In June 2018, the Veteran appealed the June 2018 RAMP rating decision to the Board by requesting review under Evidence Submission lane. 

Evidence was added to the claims file during a period of time when new evidence was not allowed. See May 2019 Correspondence. Therefore, the Board may not consider this evidence. 38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

Entitlement to a rating in excess of 20 percent for peripheral neuropathy of the left lower extremity

The Veteran’s peripheral neuropathy of the left lower extremity is assigned a 20 percent disability rating. On August 28, 2017, he filed an increased rating claim and continues to contend that the disability is more disabling than currently evaluated. 

Paralysis of the common peroneal nerve is evaluated in accordance with the criteria set forth in 38 C.F.R. § 4.124a, Diagnostic Code 8521. Under these criteria, mild incomplete paralysis is rated as 10 percent disabling. Moderate incomplete paralysis is rated as 20 percent disabling. Severe incomplete paralysis is rated as 30 disabling. A 40 percent rating is warranted for complete paralysis of the nerve. This is manifested by foot drop and slight droop of the first phalanges of all toes, cannot dorsiflex the foot, extension of the proximal phalanges of loss lost, abduction of the foot lost, adduction weakened, anesthesia covers the entire dorsum of the foot and toes. 38 C.F.R. § 4.124a. 

The words “mild,” “moderate,” and “severe” as used in the various Diagnostic Codes are not defined in the Rating Schedule. Regulations provide that ratings for peripheral neurological disorders are to be assigned based the relative impairment of motor function, trophic changes, or sensory disturbance. 38 C.F.R. § 4.120. Consideration is also given for loss of reflexes, pain, and muscle atrophy. See 38 C.F.R. §§ 4.123, 4.124. 

The term “incomplete paralysis” indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating is for the mild, or at most, the moderate degree. The disability ratings for the peripheral nerves are for unilateral involvement; when bilateral, the ratings combine with application of the bilateral factor. 38 C.F.R. § 4.124a, Note at “Diseases of the Peripheral Nerves.” The Note to 38 C.F.R. § 4.124a establishes a maximum disability rating for conditions that are wholly sensory, as opposed to a minimum disability rating for conditions that are more than wholly sensory. See Miller v. Shulkin, 28 Vet. App. 376 (2017). 

A peripheral nerve examination was conducted by VA on October 12, 2017. At that time, the diagnosis was bilateral lower extremity peripheral neuropathy, diabetes related. The Veteran complained of bilateral foot paresthesias for which he took the medication Gabapentin. Symptoms included moderate paresthesias and/or dysesthesias of each lower extremity and severe numbness of each lower extremity. The Veteran stated that he knew when the examiner was touching his feet but could not discriminate cold or vibration stimulus applied to either foot. Muscle strength testing was normal in the lower extremities with no muscle atrophy. Reflexes in the lower extremities were absent in the right knee and 1+ in the left knee and at each ankle. Sensory examination was normal at the thighs and knees, decreased at the lower leg and ankle and absent in the foot and toes of both lower extremities. There were no trophic changes. Gait was abnormal in that balance was “a bit off.” The nerves of the lower extremities were normal with the exception of the external popliteal (common peroneal) nerves of each lower extremity. The examiner quantified the incomplete paralysis as moderate in degree. The examiner also found that the Veteran would not be equally well served by amputation of either lower extremity with prosthesis in place. (This would be indicative of loss of use of the lower extremity.). Finally, the examiner noted that the Veteran’s peripheral neuropathy impacted his ability to work in that he should not be out in prolonged very cold weather and should not work from heights. He also had to be careful to wear protective foot wear all the time. The examiner stated that the Veteran could only “perform sedentary work functions.” 

Based on the above, the Board finds that the Veteran’s left lower extremity peripheral neuropathy is primarily manifest by decreased reflexes in the left knee and ankle, decreased sensation in the lower leg and absent sensation in the foot and toes, and difficulty with balance. There were no trophic changes, muscle atrophy, or evidence of complete paralysis as described in the rating schedule. Under these circumstances, the Board thus finds that the level of impairment is most analogous to moderate incomplete paralysis. 

The Board has considered all other potentially applicable Diagnostic Codes, but examination showed no evidence that the Veteran has neurological impairment associated with any other peripheral nerves that have not already been service-connected. Therefore, a separate or higher rating under a different Diagnostic Code is not warranted. 

In conclusion, the Board finds that the preponderance of the evidence is against the Veteran’s claim for a rating in excess of 20 percent for incomplete paralysis of the common peroneal nerve of the left lower extremity. In denying such a rating, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7. 

Entitlement to a rating in excess of 30 percent from August 28, 2017, to October 12, 2017, and in excess of 20 percent from October 12, 2017, for peripheral neuropathy of the right lower extremity

The Veteran’s peripheral neuropathy of the right lower extremity was originally assigned a 20 percent rating. On August 28, 2017, he filed an increased rating claim, and this resulted in the award of a 30 percent disability rating effective from the date of his claim. See November 2017 rating decision. After the Veteran disagreed with that decision, the RO reviewed the evidence anew and determined that a 30 percent disability rating was not warranted based on the evidence of record. Therefore, in the June 2018 RAMP rating decision on appeal, the RO assigned a 20 percent rating for the Veteran’s peripheral neuropathy of the right lower extremity, effective from October 12, 2017 (the date of a VA examination).

After the Veteran appealed the June 2018 RAMP rating decision to the Board, the RO conducted a special review of the file and issued an August 2018 rating decision to confirm their finding that a 30 percent disability rating was not warranted for his peripheral neuropathy of the right lower extremity. The rating decision further noted that “due process [was] not required” as their decision did not result in a decrease of the Veteran’s overall combined rating. In this regard, the Board notes that where a reduction for a single disability does not affect the combined disability rating or level of compensation paid to the Veteran, that is not a rating reduction situation. See VAOPGCPREC 71-91 (November 7, 1991). 

Given the foregoing procedural history, the Board will review the record to determine whether a rating in excess of 30 percent from August 28, 2017, to October 12, 2017, and in excess of 20 percent from October 12, 2017, for the Veteran’s peripheral neuropathy of the right lower extremity is warranted.

The criteria for evaluation of right lower extremity peripheral neuropathy is the same as that of the left, outlined above. 

The October 2017 examination results have also been outlined above. Symptoms included moderate paresthesias and/or dysesthesias of each lower extremity and severe numbness of each lower extremity. The Veteran stated that he knew when the examiner was touching his feet, but could not discriminate cold or vibration stimulus applied to either foot. Muscle strength testing was normal in the lower extremities with no muscle atrophy. Reflexes in the lower extremities were absent in the right knee and 1+ in the right ankle. Sensory examination was normal at the thighs and knees, decreased at the lower leg and ankle and absent in the foot. There were no trophic changes. The nerves of the lower extremities were normal with the exception of the external popliteal (common peroneal) nerve. The examiner quantified the incomplete paralysis as moderate in degree. 

Based on the above, the Board finds that the right lower extremity peripheral neuropathy is primarily manifest by decreased reflexes in the right knee and ankle, decreased sensation in the lower leg and absent sensation in the foot and toes, and difficulty with balance. There were no trophic changes, muscle atrophy, or evidence of complete paralysis as described in the rating schedule. Under these circumstances, the Board thus finds that the level of impairment is most analogous to moderate incomplete paralysis. As such, ratings in excess of those assigned are not shown to be warranted. The Veteran has not met the criteria for severe incomplete or of complete paralysis of the common peroneal nerve. 

The Board has considered all other potentially applicable Diagnostic Codes, but examination showed no evidence that the Veteran has neurological impairment associated with any other peripheral nerves that have not already been service-connected. Therefore, a separate or higher rating under a different Diagnostic Code is not warranted. 

In conclusion, the Board finds that the preponderance of the evidence is against the Veteran’s claim for ratings in excess of 20 or 30 percent for incomplete paralysis of the common peroneal nerve of the right lower extremity. In denying such a rating, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7. 

Entitlement to an effective date for a 30 percent evaluation for peripheral neuropathy of the right lower extremity prior to August 28, 2017,

As noted, the RO temporarily assigned a rating of 30 percent for peripheral neuropathy of the right lower extremity, effective the date of claim on August 28, 2017. It has been contended that an earlier effective date is warranted. Neither he nor his representative has made any specific contentions. 

The applicable effective date statute and regulations provide that the proper effective date for increased rating claims is the earliest date as of which it is factually ascertainable that an increase in disability had occurred, if a claim is received within one year from such date; otherwise, the effective date is the date of receipt of claim for increased rating. 38 U.S.C. § 5110(b)(2); 38 C.F.R. § 3.400(o)(2). If the increase occurred more than one year prior to the claim, the increase is effective the date of the claim for increase. Harper v. Brown, 10 Vet. App. 125 (1997); VAOPGCPREC 12-98. The Federal Circuit reaffirmed that “the plain language of [section] 5110(b)(2)... only permits an earlier effective date for increased disability compensation if that disability increased during the one-year period before the filing of the claim.” Gaston v. Shinseki, 605 F.3d 979, 983 (Fed. Cir. 2010).

In an October 2015 rating decision, the RO confirmed and continued the 20 percent rating that had been initially assigned in 2012 for the Veteran’s peripheral neuropathy of the right lower extremity. Review of the record shows no medical evidence prior to the August 2017 application for TDIU. In this regard, while VA treatment records dated in 2016 show that the Veteran was treated for various disabilities, including gastrointestinal disorders, there is no indication in the records of a worsening of the Veteran’s right lower extremity peripheral neuropathy. Under these circumstances, the earliest possible effective date is the date of the Veteran’s claim for increase, August 28, 2017. 

Significantly, it is noted that the RO has since determined that the 30 percent disability rating for the Veteran’s peripheral neuropathy of the right lower extremity was assigned in error and removed. See August 2018 rating decision. Under 38 C.F.R. § 3.400(o), a retroactive increase or additional benefit will not be awarded after basic entitlement has been terminated. Accordingly, an earlier effective date for the 30 percent disability rating is also denied on this basis.

TDIU

The Veteran contends he is eligible for TDIU. In his application for TDIU, which was received in August 2017, he reported having four years of high school education and work experience as a greeter and driver for an automotive group. In correspondence submitted by the Veteran in March 2019, he reported significant disability as a result of his neurogenic bladder. He stated that he woke up two to three times per night and needed to self-cath six to seven times per day. This made it difficult to concentrate and also made it difficult for him to leave his home for any length of time. 

Total disability ratings for compensation may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. When these percentage standards are not met, consideration may be given to entitlement on an extraschedular basis, taking into account such factors as the extent of the service-connected disability, and employment and educational background. It must be shown that the service-connected disability produces unemployability without regard to advancing age. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.19.

Marginal employment shall not be considered substantially gainful employment. Marginal employment generally shall be deemed to exist when a veteran’s earned annual income does not exceed the amount established by the U. S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist, on a facts-found basis (included but not limited to employment in a protected environment such as a family business or sheltered workshop) when earned annual income exceeds the poverty threshold. Consideration shall be given in all claims to the nature of the employment and the reason for termination. 38 C.F.R. § 4.16. 

Service connection is currently in effect for coronary artery disease, rated 60 percent disabling; neurogenic bladder, rated 30 percent disabling; peripheral neuropathy of the left lower extremity, rated 20 percent disabling; peripheral neuropathy of the right lower extremity, rated 20 percent disabling; diabetes mellitus, rated 10 percent disabling and residual scars from cardiac surgery, rated noncompensable. The Veteran’s combined evaluation is 90 percent. In addition, he has been found eligible for special monthly compensation (SMC) on account of the loss of use of a creative organ. 

On heart examination by VA in October 2017, it was reported that the Veteran had a history of coronary artery disease with triple vessel bypass surgery in 2007. It was reported that an echocardiogram performed in 2014 showed left ventricular dysfunction and an ejection fraction of 45 percent. The Veteran stated that he felt winded and short of breath with exertion. Based on an interview, the Veteran’s METs were estimated to be between 3 and 5, although part of this was found to be due to a right knee replacement and cardiac METs alone were estimated to be between 5 and 7. The examiner found that the Veteran could not do physical work due to his heart disease. Functional impact was described as dyspnea on exertion with much walking and an inability to perform physical labor. The examiner stated that the Veteran could perform sedentary work and that his last job was as a part-time car mover in an auto lot, which he had to stop because of right knee replacement surgery. 

VA outpatient treatment records dated in February 2018 document that the Veteran needed to change his catheter five to six times per day as a result of his neurogenic bladder. 

For a veteran to prevail on a claim for a total compensation rating based on individual unemployability, the record must reflect some factor which takes his case outside of the norm. The sole fact that he is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain and keep employment. The question is whether the veteran is capable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993). 

In this case, the Veteran has a number of service-connected disabilities that cause varied and diverse difficulties with his ability to function. While each examiner who recently rendered an opinion regarding the impact of the disabilities on his employability has stated that each disorder would not render him unable to engage in all forms of substantially gainful employment, the Board finds that the divergent nature of his disorders reflects factors taking the case outside the norm. His heart disease is manifested by an ejection fraction of only 45 percent and his peripheral neuropathy causes an unsteady gait and total sensory impairment of both feet and toes. The Veteran’s neurogenic bladder also requires him to change a catheter up to six times per day. When combined, the Board finds that the Veteran’s service-connected disorders render him unable to maintain or obtain substantially gainful employment consistent with his high school education. Notably, although VA examiners have indicated the Veteran would be capable of sedentary employment, his work experience has been physical in nature. As such, the benefit sought on appeal is allowed. 

 

 

A. ISHIZAWAR

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Joseph P. Gervasio

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.